IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| PHAEDRA MCMANUS,<br>ON BEHALF OF<br>CURTIS J. DUREN (DECEASED),<br><br>      Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>      Defendant. | No.9:21-CV-00250-MAC |

**REPORT AND RECOMMENDATION**

The claimant, Phaedra McManus ("McManus"), on behalf of her deceased husband, Curtis J. Duren ("Duren"), requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration.[1] The District Court referred the case to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. The undersigned finds that the Administrative Law Judge ("ALJ") erred and recommends remanding the case for further administrative review.

**I. Judicial Review**

This court reviews the Commissioner's denial of social security disability benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) the

---

[1] The substituted party, although married to Duren, had not lived with him from 2011 through February 27, 2017 (the date of his death). Consequently, under the Supplemental Security Income rules of eligibility, McManus would not qualify for any benefits under this program. (*See* 20 CFR 416.542(b)). Moreover, the record does not indicate that Duren authorized interim assistance reimbursement to the State pursuant to section 1631(g) of the Social Security Act. Accordingly, the claimant's application for Social Security Income under a Title XVI claim was dismissed. In light of this dismissal, the remainder of this decision will only address the Title II application for a period of disability and disability insurance benefits. Therefore, the relevant period for consideration is from Duren's alleged onset date to his death on February 27, 2017.

Commissioner used the proper legal standards to evaluate the evidence." *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted). Substantial evidence is merely enough that a reasonable mind could arrive at the same decision; though the evidence "must be more than a scintilla[,] it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quotation marks and citation omitted).

Reviewing courts, therefore, give the Commissioner's decisions great deference. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Commission*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). Rather, it is for the Commissioner to weigh evidence and resolve conflicts. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

## II.  The Disability Determination Process

In assessing disability benefits, the Commissioner uses a five-step sequential evaluation process to determine whether an individual is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520. At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *See id.* § 404.1520(a)(4)(i). "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton v. Apfel*, 209 F.3d 448, 452–53 (5th Cir. 2000) (citing 20 C.F.R. §§ 404.1572(a)–(b)). If the claimant engages in substantial work experience, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work

2

experience. *Id.* If the claimant is not engaging in substantial work experience, the analysis proceeds to the next step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." *See id.* § 404.1520(a)(4)(ii). An impairment or combination of impairments is considered severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *See id.* §§ 404.1520(c). "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. *See* 20 C.F.R. § 404.1520(c). If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the next step.

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment found in the Listing of Impairments ("the Listings"), a set of medical criteria found at 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing, and it has lasted or is expected to last for a continuous period of at least twelve months, the claimant is disabled. *See id.* § 404.1520(d). If not, the analysis proceeds to the next step.

Before reaching step four of the five-step sequential evaluation process, however, the ALJ must first determine the claimant's residual functional capacity ("RFC"), which is the most

that he can still do despite his limitations. *See id.* § 416.945(a)(1). The ALJ uses the RFC assessment at step four to determine if the claimant can do his past relevant work and at step five to determine if the claimant can adjust to any other work existing in the national economy. *See id.* § 404.1520(e).

At step four, the ALJ reviews the RFC assessment and the demands of the claimant's past relevant work. *See id.* § 404.1520(f). The term "past relevant work" ("PRW") is defined as work that the claimant has done within the past fifteen years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. *See id.* § 404.1560(b)(1). If the claimant has the RFC to do his PRW, he is not disabled. *See id.* § 404.1560(3). If the claimant's impairment or combination of impairments preclude him from performing his PRW, the fifth and final step of the sequential evaluation process assesses the claimant's ability—given his residual capacities, age, education, and work experience—to do other work. *See id.* § 404.1520(g). If the claimant is able to do other work, he is not disabled. *Id.* If the claimant's impairment or combination of impairments precludes him from performing any other type of work, he will be found to be disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the sequential evaluation process. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Id.*

### III.  Procedural History

Duren's application for social security benefits has been pending for over a decade.² His application was first denied on March 20, 2013 (ironically while he was hospitalized for chronic pancreatitis, alcohol abuse, and thrombocytopenia) (Tr. 69-79, 729). He appealed the denial and appeared for a hearing before Administrative Law Judge ("ALJ") Suttles, who denied the claims in an order dated March 29, 2014. (Tr. 111.) Duren appealed and the Appeal Council granted his request for review in an order dated November 25, 2015. (Tr. 130-132.) The Appeals Council's order instructed ALJ Suttles to review Duren's vision impairment, question the vocational expert on inconsistencies, and further consider the evidence of record in determining Duren's maximum RFC. (Tr. 130-132.)

There was a subsequent administrative hearing on January 5, 2018, and ALJ Suttles issued his second decision denying benefits on February 27, 2018. (Tr. 134-157.) But by then, Duren had died, leaving his wife as the surviving party.³ (Tr. 34.) McManus appealed ALJ Suttles's second denial, which the Appeal Council granted on June 26, 2020. (Tr. 158.) Relevant to this appeal and *inter alia,* the Appeals Council explicitly ordered the ALJ to:

- Further consider whether the claimant's liver cirrhosis meets or equals the severity of listing 5.05.

- Further [consider], if necessary, evidence from a medical expert related to whether the claimant's impairments meet or equal the severity of an impairment listed in Appendix 1, Subpart P, Regulations No. 4 (20 CFR 404.1513a(b)(2) and 416.913a(b)(2)).

---

² He filed for disability benefits in December 2012, alleging onset disability date of March 1, 2011. (Tr. 376-82, 429.)

³ The records indicate that Duren was a severe alcoholic. He died on March 2, 2017, at the age of 52 from "Alcoholic Liver Cirrhosis." (Tr. 397.)

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p).

(Tr. 160). McManus's application was denied a third time on October 21, 2020 by ALJ Guitierrez. (Tr. 16-25.) McManus again appealed the decision, and the Appeals Council denied her request for review in an order dated November 30, 2020. (Tr. 1-2).

ALJ Gutierrez utilized the five-step sequential analysis model specified by regulations and approved by courts. At step one, ALJ Gutierrez found that Duren had not engaged in substantial gainful activity since the alleged onset date. (Tr. 19.) At step two, ALJ Gutierrez determined that he had the severe impairments of "alcohol abuse with liver disease, a hearing impairment, a vision impairment, arthropathies, pancreatitis, and portal hypertension." (*Id*.) At step three, ALJ Gutierrez considered Listing 5.05 for liver disease, Listing 5.08 for pancreatitis, Listing 1.02 for arthropathies, Listing 2.02 for vision impairment, and Listing 2.10 for hearing impairment, but found that "the evidence does not support the findings or degree of functional restriction necessary for [Duren's] physical impairments to meet or equal in severity any listed impairment." (Tr. 20.) At step four, ALJ Gutierrez found Duren unable to perform his past relevant work (through June 2014 when his insured status expired). (*Id*.) However, at step five, ALJ Gutierrez found that through June 2014 when his insured status expired, Duren could have made a successful adjustment to other work that existed in significant numbers in the national economy based on vocational expert testimony. (Tr. 20, 23-25.) Thus, ALJ Gutierrez concluded that Duren was not disabled from March 1, 2011, his alleged disability onset date, through June 30, 2014, when his insured status expired. (Tr. 25). Consequently, McManus filed the instant appeal with the district court on September 24, 2021. (Dkt. #1.)

### IV. Points of Error and Commissioner's Response

McManus raises four points of error. First, ALJ Gutierrez did not consider whether Duren's liver cirrhosis met or equaled the severity of listing 5.05, but instead made a conclusory statement which contravened the order of the Appeals Council. (Dkt. #16, p. 13.) Second, ALJ Gutierrez committed reversible error when he did not seek additional evidence from a medical expert related to whether Duren's impairments met or equaled the severity of an Listed impairment. (*Id.* at p. 14.) Third, ALJ Gutierrez did not give further consideration to the claimant's maximum RFC and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p). (*Id.* at p. 16) And fourth, ALJ Gutierrez did not obtain evidence from a vocational expert through hypothetical questions that reflected the specific capacity/limitations established by the record as a whole. (*Id.* at p. 17.)

The Commissioner responds that ALJ Gutierrez's decision is supported by substantial evidence and lacks legal error. The undersigned finds that her first point of error warrants remand, and therefore declines to address the remaining points of error.

### V. Step Three Determination: Listing 5.05

As mentioned above, the third step of the sequential disability evaluation process requires the ALJ to evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). The Listings "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citations omitted). The Listings "are descriptions of various physical and mental illnesses . . . most of which are categorized by the body system they affect."

7

*Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). "Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." *Id.* at 530.

A claimant whose impairments satisfies a Listing "will be considered disabled without the need to consider vocational factors." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) ). For this reason, the criteria in the Listings are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). The medical criteria defining the listed impairments have been deliberately set at a higher level of severity than the statutory standard for receiving benefits because the Listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan*, 493 U.S. at 532.

Each Listing specifies the objective medical and other findings needed to satisfy the criteria of that particular listing. *See* 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). A diagnosis, by itself, is insufficient to establish that a claimant's impairment (or combination of impairments) meets or medically equals the criteria of a Listing. *See id.* § 404.1525(d). Rather, a claimant's impairment or combination of impairments meets the requirements of a listing only "when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction," *id.* § 404.1525(c)(3), and it is expected to result in death or it has lasted or is expected to last for a continuous period of at least twelve months, *see id.* § 404.1509. An impairment or combination of impairments that manifests only some of a Listing's criteria, no matter how severely, does not qualify; if a claimant's impairment (or combination of impairments) does not satisfy every component, it does not meet the listing. *See id.* § 404.1525(c)(3). The claimant has the burden to establish that he has a Listings-level impairment. *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).

Here, McManus contends that ALJ Gutierrez erred in finding Duren did not meet or equal Listing 5.05A, which pertains to chronic liver disease, as it was ordered to do by the Appeals Council in the June 26, 2020 order. Listing 5.05A requires that the claimant have "chronic liver disease" exhibited by:

> [h]emorrhaging from esophageal, gastric, or ectopic varices or from portal hypertensive gastropathy, demonstrated by endoscopy, x-ray, or other appropriate medically acceptable imaging, resulting in hemodynamic instability as defined in 5.00D5, and requiring hospitalization for transfusion of at least 2 units of blood.

20 C.F.R. pt. 404, subpt. P, app'x 1, § 5.05A. "Under 5.05A, hemodynamic instability is diagnosed with signs such as pallor (pale skin), diaphoresis (profuse perspiration), rapid pulse, low blood pressure, postural hypotension (pronounced fall in blood pressure when arising to an upright position from lying down) or syncope (fainting)."[4] *Id.* § 5.00D5.

At step three, ALJ Gutierrez was required to discuss the evidence and to explain why he found Duren not to be disabled at that step. *See Audler*, 501 F.3d at 448. In determining whether Duren satisfied Listing 5.05, ALJ Gutierrez wrote

> The undersigned considered the claimant's liver disease under listing 5.05, for chronic liver disease. From the alleged onset date through the date last insured, the record does not reflect listing level chronic liver disease. The undersigned notes the record contains the presence of ascites that may satisfy 5.05(B), but this was outside the adjudicatory period. The record does not show that the claimant met a listing under 5.05 prior to the claimant's date last insured.

(Tr. 20.) McManus, relying on *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007), contends that ALJ Gutierrez's step three analysis is inadequate and demands remand. Specifically, she contends that ALJ Gutierrez erred by offering only a perfunctory analysis of Listing 5.05A, which was not specifically mentioned by ALJ Gutierrez.

---

[4] The term *hemodynamic* is defined as "relating to the physical aspects of blood circulation." STEDMAN'S MEDICAL DICTIONARY 868 (28th ed. 2006).

The ALJ in *Audler* did not identify any listed impairments she considered at step three and did not explain how she made this finding or on what evidence she relied. *Id*. at 448. The Fifth Circuit held that the ALJ committed legal error when she "summarily concluded" that the claimant's impairments, while severe, were not severe enough to meet or medically equal the criteria of a Listing. *Id.* "Such a bare conclusion is beyond meaningful judicial review." *Id.* (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). The court explained

> By the explicit terms of the [Social Security Act], the ALJ was required to discuss the evidence offered in support of Audler's claim for disability and to explain why she found Audler not to be disabled at [Step Three]. Although the ALJ is not always required to do an exhaustive point-by-point discussion, in this case, the ALJ offered nothing to support her conclusion at this step and because she did not, "we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not."

*Audler* at 448 (internal citations omitted).[5] However, this case differs from *Audler*. Here, ALJ Gutierrez explicitly mentioned Listing 5.05 at step three. He explains the basis for his decision: "The record does not show that the claimant met a listing under 5.05 prior to [Duren's] date last insured." (Tr. 20.) Although ALJ Gutierrez mentions Listing 5.05 and 5.05B, he does not explicitly address 5.05A—which McManus claims is satisfied. Therefore, the undersigned finds that ALJ Gutierrez's explanation—without more—constitutes legal error because it does not allow for meaningful review of the evidence on which the ALJ relied.

---

5  Under the Social Security Act,

> [t]he Commissioner of Social Security is directed to make any findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security, which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.

42 U.S.C. § 405(b)(1).

## VI.  Was the ALJ's error harmless?

Not every error warrants reversal or remand. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). "Procedural perfection in administrative proceedings is not required," and this court will vacate a judgment only if "the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988) (per curiam) ); *see also* FED. R. CIV. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). Procedural improprieties alleged by a Social Security disability claimant "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

The burden of establishing a Listings-level impairment at step three rests with the claimant. *See Selders*, 914 F.2d at 619. Accordingly, McManus cited evidence that she contends supports a finding that Duren suffered from Listings-level liver disease prior to his DLI:

> In support of Decedent meeting a listing under 5.05(A), Plaintiff seeks a review of records from UTMB Galveston from March 16, 2013 to March 21, 2013. (R. at 728-839). On the date of admission, Decedent had esophageal varices are demonstrated by a EGD and colonoscopy which meets the listing. (R. at 746). Decedent also was diagnosed with portal hypertension which also meets the listing. (R. at 746). The requirement for hemodynamic instability is defined in Listing 5.00D5. According to Listing 5.00D5, hemodynamic instability "is diagnosed with signs such as pallor (pale skin), diaphoresis (profuse perspiration), rapid pulse, low blood pressure, postural hypotension (pronounced fall in blood pressure when arising to an upright position from lying down) or syncope (fainting). Hemorrhaging that results in hemodynamic instability is potentially life-threatening and therefore requires hospitalization for transfusion and supportive care. Under 5.05A, we require only one hospitalization for transfusion

> of at least 2 units of blood." SSA Listing 5.00(D)(5). While it does not appear there are records that indicate pallor, diaphoresis, rapid pulse, or low blood pressure, Decedent received six units of blood during admission which exceeds the listing. (R. at 746, 747, 790). Listing 5.00D5 is not clear as to whether the examples of hemodynamic instability are required or whether loss of blood can be inferred with a transfusion.

(Tr. 16, p. 13.) This evidence *appears* to support the finding that Duren exhibited a Listing-level impairment, however, ALJ Gutierrez's cursory analysis does not permit the Court to understand how he assessed this evidence. *See McCullough v. Berryhill*, No. SA-18-CV-00128-ESC, 2019 WL 1431124, at *10 (W.D. Tex. Mar. 29, 2019) (remanding where ALJ concluded that claimant did not establish a Listings-level impairment because "there was no evidence" of multiple qualifying symptoms). Here, without more detailed discussion of the evidence, the undersigned is unable to understand how, or whether, ALJ Gutierrez evaluated the evidence relied on to show a Listings-level impairment. Accordingly, ALJ Gutierrez's failure to consider all of the relevant medical evidence of record or properly analyze Listing 5.05 at step three of the five-step sequential evaluation process constitutes legal error, and this failure was an error that deprived McManus of a fair evaluation of Duren's impairments and was not harmless.

## VII. Recommendation

Given the lengthy procedural history in this case, another remand due to legal error by the Commissioner is very regrettable. However, the Commissioner's decision denying Duren's benefits should remanded with instructions to reconsider the entire evidentiary record. It is worth noting that no medical expert reviewed Duren's hospital records from his 2013 hospitalization to determine whether he demonstrated a Listings-level impairment. While it is not required (and the ALJ is not bound to accept a medical source's opinion), it is highly advisable that the ALJ should consider seeking a medical expert opinion to aid his step three analysis, and the Commissioner is encouraged to address this remand with urgency. Because

remand is appropriate on the grounds presented in McManus's first argument, the court pretermits discussion of her remaining points of error. She can raise these arguments before the ALJ on remand. *See* 20 C.F.R. § 404.983 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

## VII. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2). A party who objects to this report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1) (2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 18th day of December, 2023.

_____
Zack Hawthorn
United States Magistrate Judge

13